RICHARD H. HOWLAND *vs.* ACTING SUPERINTENDENT OF BUILDINGS and INSPECTOR of BUILDINGS of CAMBRIDGE & others.

Middlesex.     May 10, 1951. — November 30, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, & WILLIAMS, JJ.

*Zoning. Real Property,* Subdivision. *Municipal Corporations,* Officers and agents. *Constitutional Law,* Zoning, Police power. *Equity Pleading and Practice,* Appeal, Decree, Zoning appeal.

Nothing appeared giving a municipal officer having the functions of an inspector of buildings any authority to grant "permission to subdivide" premises "so as to permit the separate sale of . . . [a] portion" thereof, or conferring any right of appeal to the board of appeals from a refusal by the officer to grant such "permission."

On an appeal in a suit in equity with a record containing findings by the trial judge but not a report of the evidence, certain documents not incorporated in the findings were not properly before this court and could not be considered by it, even if they had been introduced at the trial.

A proposed division of a parcel of city land, which was under a single ownership and had on it three dwellings erected long before the adoption of the city's zoning ordinance, into three lots under separate ownerships, each lot to include one of the dwellings, two of the lots to have the entire street frontage of the parcel, the third lot, in the rear of the other two lots, to have no street frontage and access to the street only over a narrow right of way along the boundary between the other two lots, and none of the lots to conform to the area and frontage requirements of the ordinance, would constitute a change to a use of the parcel which would be different from the preexisting use thereof as a unit and would not be within the protection afforded by the ordinance to the preexisting use.

The owner of a parcel of city land on which three dwellings had been erected long before the adoption of the city's zoning ordinance was not entitled as of right to a zoning variance permitting a division of the parcel into three lots, each to include one of the dwellings, and separate ownerships of the lots, which would result in a use of the parcel not in conformity to the ordinance and different from the preexisting use thereof as a unit protected by the ordinance, even if it would be more advantageous to him to sell such lots separately than to sell the whole parcel as a unit.

Application of a zoning ordinance in such a manner as to prevent the owner of a parcel of land containing three dwellings from dividing the parcel into three lots, each to include one of the dwellings, and selling the lots separately was not unconstitutional as arbitrary, unreasonable or oppressive, even if it would be more advantageous to him to sell such lots separately than to sell the whole parcel as a unit.

In a suit in equity in the Superior Court under G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, by way of appeal from a decision of a zoning board of appeals, where the decision of the court was favorable to the board, the final decree should not have dismissed the bill, but should have been in the form set forth in *Lambert* v. *Board of Appeals of Lowell*, 295 Mass. 224, 228.

BILL IN EQUITY, filed in the Superior Court on August 14, 1950.

The suit was heard by *Kirk*, J.

*S. S. Ganz* for the plaintiff.

*J. A. Daly*, City Solicitor, for the defendants.

QUA, C.J.   This is a bill in equity brought in the Superior Court by way of appeal against the "acting superintendent of buildings and inspector of buildings" of Cambridge and the board of appeal of Cambridge, growing out of the alleged refusal of the "acting superintendent of buildings and inspector of buildings" to grant the plaintiff's "request for permission to subdivide" his property "so as to permit the

separate sale of the portion of his premises comprising 92 Foster Street," and out of action of the board of appeal alleged to constitute a "denial" of an alleged appeal by the plaintiff to the board from the action of the superintendent and inspector; and also growing out of action of the board in refusing its own "approval" of the proposed subdivision. The Superior Court dismissed the bill, and an appeal by the plaintiff brings the case here. G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, and as amended by St. 1935, c. 388, §§ 1 and 2, by St. 1941, c. 198, §§ 1 and 2, and by St. 1945, c. 167.

The case against the "acting superintendent of buildings and inspector of buildings" can be shortly disposed of. We find nothing in the statutes or in so much of the ordinances of Cambridge as appears in the record which gives authority to a superintendent of buildings or to an inspector of buildings or to any officer of that general character by whatever name called (see G. L. [Ter. Ed.] c. 143, § 6, as appearing in St. 1946, c. 363, § 4, as amended by St. 1949, c. 541, § 1) to grant "permission" for the "subdivision" of property to permit separate sales of portions thereof or authority to control sales of land or the boundaries of land to be sold, or which recognizes any right to appeal to the board of appeal from any refusal of such a superintendent or inspector to act in such matters. The bill was rightly dismissed as to the "acting superintendent of buildings and inspector of buildings."

In so far as the plaintiff's application to the board of appeal related to the refusal to act of the "superintendent of buildings and inspector of buildings" it also is disposed of by what has been said; but so much of that application as seeks the board's approval of the proposed subdivision of the plaintiff's property seems to us, for reasons which will more clearly appear when the facts are stated, to be in substance a petition for a variance within the jurisdiction of the board. G. L. (Ter. Ed.) c. 40, § 30, eighth paragraph, subparagraph 3, as appearing in St. 1933, c. 269, § 1, as amended by St. 1935, c. 388, § 2. The board so treated it.

The facts pertinent to the matter of a variance are, we
believe, quite different from those presented in any other of
our cases.  They are ascertained from the pleadings and the
findings of the judge.  The evidence is not reported.  Cer-
tain documents which may have been introduced at the
hearing are not incorporated in the findings and are not
properly before us and cannot be considered.  *Gordon* v.
*Guernsey*, 316 Mass. 106.  The facts appearing from the
record are substantially these: The plaintiff owns "a lot"
of land on Foster Street "in the densest part of a dense
residential district."  This lot has a frontage of sixty feet
and a depth of one hundred feet.  On it are three dwelling
houses and a three car garage.  The houses are at least
seventy-five years old.  There have been no structural
changes in any of the buildings since 1920.  The plaintiff
no longer lives in Cambridge and desires to sell at least a
part of the property.  He could sell more advantageously
if each house could be sold separately.  He therefore pro-
poses to subdivide his lot into three parcels, of which
"Lot A" would include the house numbered 92 on Foster
Street and the garage.  This parcel would have a frontage
of thirty-eight and four tenths feet on Foster Street and a
depth of seventy-three feet.  "Lot C" would include the
house at 96 Foster Street and would have a frontage of
twenty-one and six tenths feet on Foster Street and a depth
of seventy-three feet.  "Lot B" would include the house
in the rear of the other two now numbered 94 Foster Street
and would be sixty feet by twenty-seven feet in size.  This
lot would have no frontage on the street and could be
reached from the street only by a proposed private right of
way four feet wide along the boundary between "Lot A"
and "Lot C."  "No visible change whatever would result
from the subdivision which the plaintiff proposes.  The only
consequence is that the ownership will be held by three
persons instead of one person, and Lot C will be subject to
an easement or right of way for the benefit of the owner of
Lot B."

It further appears that the zoning ordinance of Cambridge

adopted in 1943 provides that in a Residence C–1 District, in which the plaintiff's land is located, "the minimum lot area, lot width," shall be "5,000 sq. feet and 50 ft. frontage." Other provisions are these, both of which are found in Article VI: "Sec. 2. Frontage and Reduction of Area. 1. No building shall be erected on a lot which does not have frontage on a street, road or way at least twenty (20) feet in width. 2. No lot shall be changed in size or shape so that the height, area or yard provisions herein prescribed are no longer satisfied." [1] "Sec. 1. Existing buildings. 1. This ordinance shall not apply to existing buildings or structures, nor to the existing use of any building or structure, or of land to the extent to which it is used at the time of adoption of this ordinance, but it shall apply to any change of use thereof . . .." [2]

The plaintiff's first contention is that since his land and buildings existed in their present physical condition before any zoning ordinance had been enacted, he is entitled to dispose of his property as he sees fit free from the limitations of the zoning ordinance.

It would seem that one answer to this contention is that if the plaintiff has an existing nonconforming use which he does not propose to change he needs no variance and is not aggrieved by his failure to obtain one. But the case has been argued more broadly and we prefer to decide it on broader grounds. In our opinion the proposed division of the plaintiff's lot into three separate lots owned by different persons would change the use of his land to a different use which would be contrary to the ordinance and beyond the protection of the previously existing use. At the present time there is but one single lot in a single ownership the whole of which in a sense pertains to all the buildings. See *Orr* v. *Fuller*, 172 Mass. 597; *Trustees of Boston University* v. *Commonwealth*, 286 Mass. 57, 64. It may fairly be in-

---

[1] Except as herein set forth the record fails to disclose what those "height, area or yard provisions" were.

[2] This provision is in accordance with the enabling statute, G. L. (Ter. Ed.) c. 40, § 26, as appearing in St. 1933, c. 269, § 1.

ferred that the land between the buildings is now either actually available or may readily be made available for passage and other needs of the dwelling in the rear as well as of those in front. If, however, the land were divided for sale as proposed, there would be a dwelling owned by one person located on a small separate lot in the rear, containing far less than five thousand square feet and having no frontage on the street and no access to it except by means of a right of way only four feet wide over land of others. Neither of the two lots having frontage would contain the required five thousand feet or have the required frontage of fifty feet. The three small lots into which the present lot would be divided would pertain separately and exclusively to the several respective dwellings. The rear dwelling would become isolated; fire hazards might be increased; and some at least of the consequences might follow which were intended to be prevented by the requirement of a prescribed area and frontage for lots containing buildings. These requirements seem to us within the purposes enumerated in G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1. *Simon* v. *Needham*, 311 Mass. 560. Careful consideration leads us to the conclusion that the plaintiff has not the right to make what is really a change of use of his land under the shelter of nonconformity existing when the ordinance was enacted. See *Wood* v. *Building Commissioner of Boston*, 256 Mass. 238. He cannot insist as of right upon being allowed a variance to enable him to make such change of use. Whether the board could have granted such variance is another matter. See *Everpure Ice Manuf. Co. Inc.* v. *Board of Appeals of Lawrence*, 324 Mass. 433, 438, and cases cited. A similar view seems to have been taken of a similar problem in *Clemons* v. *Los Angeles*, 36 Cal. (2d) 95, 103–104. And see *Peterson* v. *Board of Adjustment of Montclair*, 7 N. J. Super. 282.

The plaintiff also argues that the ordinance is unconstitutional as applied to him, citing *Pittsfield* v. *Oleksak*, 313 Mass. 553, and *Nectow* v. *Cambridge*, 277 U. S. 183. But the record fails to disclose that the application of the or-

dinance to the plaintiff is unreasonable, arbitrary, or oppressive. All that appears is that the plaintiff could sell his property more advantageously (how much more does not appear) if he could divide it. A large proportion of the owners of lands and buildings affected by zoning ordinances could say with equal truth that their lands would be more saleable if there were no such ordinances.

The final decree of the Superior Court in so far as it dismisses the bill as to the superintendent and inspector is affirmed. In so far as it relates to the board of appeal it should be amended to agree with the form set forth in *Lambert* v. *Board of Appeals of Lowell*, 295 Mass. 224, 228.

*So ordered.*