[No. 32464.  Department Two.  February 19, 1954.]

MARGARET COLEMAN, *Respondent,* v. THE CITY OF WALLA WALLA *et al., Appellants.*[1]

*John C. Tuttle, Charles Snyder,* and *Helsell, Paul, Fetterman, Todd & Hokanson,* for appellants.

*James Leavy,* for respondent.

FINLEY, J.—Plaintiff, Mrs. Margaret Coleman, owns a large and spacious home, located near the Whitman college campus in Walla Walla, Washington. On April 21, 1952, she agreed in writing to sell the home to the Delta Tau

[1]Reported in 266 P. (2d) 1034.

Delta fraternity, subject to the condition that the premises could be used as a fraternity house without violating city. zoning regulations. Under zoning ordinances enacted by the city of Walla Walla in 1947 and 1949, Mrs. Coleman's home is located in a zone designated as "R-1, Residential Single Family District." Section 4 of the city ordinance provides, in part, as follows:

"In the R-1, Residential Single Family District, no building or premises shall be used and no building shall be hereafter erected or structually altered, unless otherwise provided for in this ordinance, except for one or more of the following uses:
"1. Single family dwellings. . . ."

Section 12 of the city ordinance reads, in part, as follows:

"1. *The lawful use of any building, land or premises existing at the time of passage of this ordinance, although such use does not conform to the provisions hereof, may be continued,* but if such non-conforming use is discontinued for a period of a year or more, any future use of said building, land or premises shall be in conformity with the provisions of this ordinance. . . .
"4. Whenever a non-conforming use of a building, land or premises has been changed to a more restricted use or to a conforming use, such use shall not thereafter be changed to a less restricted use, unless the district in which such building, land or premises is located is changed to a less restricted use."

It is contended by Mrs. Coleman that her home was used as a rooming house for college students and others prior to the enactment of the city zoning ordinance; that paragraph one of section twelve of the ordinance, quoted above, permits continuation of her use of the home as a rooming house; that, in fact, the use of the premises as a fraternity house is merely a continuation of a valid nonconforming use as a rooming house. In her complaint, she asks for declaratory relief, namely, an adjudication that her home could be used by the Whitman chapter of Delta Tau Delta as a fraternity house without violating the city zoning ordinance.

It is the contention of the city that, under the pertinent zoning ordinance, the use of the Coleman home as a frater-

nity house would constitute an unlawful extension or enlargement of a prior existing nonconforming use. The trial court rendered a decision in favor of Mrs. Coleman in its conclusion of law No. 1, stating:

"That the use of plaintiff's premises hereinabove described for fraternity house purposes is not prohibited and is a continuation of the previously established non-conforming use and that said premises may be so used by the Delta Tau Delta fraternity, plaintiff's proposed buyer of said premises . . ."

Appellants assign error to the above conclusion of the trial court; furthermore, error is assigned to the trial court's findings:

(a) ". . . that no major alternations were proposed or are needed to utilize the building as a fraternity house." (Part of finding of fact No. V)

(b) ". . . that said use of said premises . . . subsequent to the passage of said zoning ordinances established a non-conforming use of said premises; that no change in the use of said premises is contemplated except a change in the denomination of the home from a 'rooming house' to a 'fraternity house;' that the present established non-conforming use of said house is as a rooming house and that the same is used by college students, all of whom at the present time, are members of one fraternity; . . . that the proposed use as a fraternity house is substantially the same as the former use and will not be injurious to the public health, morals, safety or general welfare; that the prohibition of the *ouse* as a fraternity house would constitute a taking of property without compensation." (Part of finding of fact No. VI)

· (c) "That the proposed use of said premises by said Delta Tau Delta fraternity as a fraternity house is merely a continuation of the prior and present use thereof and that no change of use is in any way contemplated; . . ." (Part of finding of fact No. IX)

Our review of the record on appeal convinces us that the following significant facts are supported or established by a preponderance of the evidence. Over a period of several years prior to the enactment of the pertinent city zoning ordinance, Mrs. Coleman rented rooms to an average of four or five persons, some of whom were college students. At one

time prior to the enactment of the ordinance, she rented rooms to a maximum of thirteen individuals, which maximum number of roomers included several family units of two or more persons. The use made of her home was essentially as a rooming house rather than a boarding house, although limited cooking privileges were sometimes allowed various roomers. The Delta Tau Delta fraternity, at the time of the trial, had fifteen members and nine pledges and contemplated having an average membership of thirty-five, after acquisition of a fraternity house by the organization. The fraternity would use Mrs. Coleman's home to provide *boarding* as well as *rooming* facilities for its members. The home would also be used for social and other functions and, generally, as a fraternity house. In this connection, alterations would be required to provide adequate sleeping and boarding facilities for members of the fraternity and possibly would involve additions to the existing bathroom facilities.

In *State ex rel. Miller v. Cain,* 40 Wn. (2d) 216, 242 P. (2d) 505, we quoted from *Thayer v. Board of Appeals of Hartford,* 114 Conn. 15, 157 Atl. 273 (1931), as follows:

" 'The ultimate purpose of zoning ordinances is to confine certain classes of buildings and uses to certain localities. The continued existence of those which are nonconforming is inconsistent with that object, and it is contemplated that conditions should be reduced to conformity as completely and as speedily as possible with due regard to the special interests of those concerned, and where suppression is not feasible without working substantial injustice, that there shall be accomplished "the greatest possible amelioration of the offending use which justice to that use permits." "The accepted method of accomplishing this result is as follows: The nonconformity is in no case allowed to increase. It is permitted to continue until some change in the premises is contemplated by the owner, when, in so far as expedient, the authorities take advantage of this fact to compel a lessening or complete suppression of the nonconformity." ' "

Similarly, 8 McQuillin on Municipal Corporations (3d ed.) 366, § 25.183, reads:

"Public policy and the spirit of zoning measures, of which the courts take cognizance, are to restrict and not to in-

crease nonconforming uses. This is necessarily implied by a zoning plan comprehensive in character. Consistently, zoning policy is against the indefinite extension of nonconforming uses. The public effort is not to extend a nonconforming use but rather to permit it to exist as long as necessary and then to require conformity in the future. Indeed, the public intent is the eventual elimination of nonconforming uses. It is only to avoid injustice that zoning ordinances generally except existing nonconforming uses."

And also in § 25.202, p. 389, the author states:

"The general rule is that a nonconforming use in existence when a zoning ordinance is enacted cannot be changed into some other kind of a nonconforming use."

In *Town of Lexington v. Bean,* 272 Mass. 547, 172 N. E. 867, certain premises had been used by the owner thereof as a repair shop for the maintenance of his trucks operated in connection with his trucking and furniture moving business. The town of Lexington enacted zoning regulations whereby the premises in question were placed in a residential or two-family dwelling district. Thereafter, the above indicated use of the premises by the owner constituted a nonconforming use. Subsequently, the premises were sold to another individual, who attempted to use them in the operation of a *public* garage. The Massachusetts court held that the new owner's contemplated use of the premises was an extension of a nonconforming use in violation of the town ordinance and, therefore, was prohibited.

In *Edmonds v. Board of Supervisors, Los Angeles County,* 236 P. (2d) (Cal. App.) 646, certain premises were used for the operation of a trailer court. The property was rezoned and restricted to residential use. At the time of the rezoning, the owner was renting space for the accommodation of tenants of twenty automobile trailers. Thereafter, he rented space for thirty additional automobile trailers, and, at the time of the trial, forty-eight automobile trailers were being operated on the premises. The California court held that the owner of the premises was not entitled to extend or enlarge an existing nonconforming use beyond the number of trailers located on the premises at the time

the ordinance was adopted. Reference was made to *Pisicchio v. Board of Appeals of Village of Freeport,* 165 Misc. 156, 300 N. Y. S. 368, as follows:

"Unless owners of nonconforming uses in zoning areas are required to adhere to the excepted use in volume of trade as well as character of business, zoning laws will be rendered ineffectual and such favored parcels of property will assume great values based not upon a natural growth, but upon the right of the owner to extend and enlarge the existing nonconforming use."

See, also, *Howland v. Acting Superintendent of Buildings and Inspector of Buildings of Cambridge,* 328 Mass. 155, 102 N. E. (2d) 423; *National Lbr. Products Co. v. Ponzio,* 133 N. J. L. 95, 42 A. (2d) 753; *Berdan v. City of Paterson,* 1 N. J. 199, 62 A. (2d) 680; *Simone v. Peters,* 135 N. J. L. 495, 53 A. (2d) 315; *Burmore Co. v. Smith,* 124 N. J. L. 541, 12 A. (2d) 353; *Bowen v. Hider,* 37 N. Y. S. (2d) 76.

■ Our review of the record in the case at bar convinces us that a preponderance of the evidence establishes facts (a) contrary to the findings of the trial court, above quoted, and (b) inconsistent with the conclusion of the trial court set out heretofore in this opinion. Our analysis of our own zoning decisions and those from other jurisdictions cited hereinbefore has led us to conclude that the use of Mrs. Coleman's home as a fraternity house, as contemplated by the Whitman College chapter of Delta Tau Delta, would constitute an extension of an existing nonconforming use in violation of the zoning regulations of the city of Walla Walla. The judgment of the trial court is hereby reversed, with instructions that the declaratory relief sought by Mrs. Coleman be denied and her action dismissed.

HAMLEY and DONWORTH, JJ., concur.

SCHWELLENBACH, J. (concurring in the result)—I grudgingly concur in the result in view of our recent decisions. If we continue our present trend of upholding zoning commissions without regard to the rights of property owners, it will most likely soon be the law of this state that, if a property owner changes the color of the paint on his house,

that would constitute an extension of an existing noncon-
forming use.

GRADY, C. J. (dissenting)—I am unable to so easily reject
the findings of fact made and the conclusions reached by
the trial judge as is done in the majority opinion. We must
not overlook the fact that the trial judge had served in that
capacity for many years and had long been a member of
this court. By agreement of the parties, he visited the prem-
ises involved during the trial. He took the case under ad-
visement and wrote an opinion in which he discussed the
evidence and cited applicable law on the subject being
considered.

Based upon his view of the evidence, the trial judge found
the facts to be that, prior to the passage of the zoning ordi-
nance, the dwelling of respondent had been used as a room-
ing house and for student social functions like those carried
on in sorority and fraternity houses; that such uses of the
property both prior to and subsequent to the passage of the
zoning ordinance established a nonconforming use thereof;
that no change in use of the property was contemplated
except a change in the denomination of the home from a
"rooming house" to a "fraternity house"; that it is proposed
to use the property as a place of residence for college stu-
dents, all of whom are members of one fraternity, and to
denominate the same as a "fraternity house"; and that the
proposed use as such will be substantially the same as the
former use and will not be injurious to public health, morals,
safety, or general welfare. The court concluded that the
action of the city prohibiting the use of the property as and
for a fraternity house was not valid.

I recognize that, in carrying out the general policy of a
zoning ordinance, it is desirable that nonconforming prop-
erty should be so adjusted that it will be conforming in
character, and that one of the many methods adopted to
achieve such result, particularly in the case of a residence
zone, is to so closely and technically define the particular
nonconforming use that it is impossible to make even an
occupancy change in the use of the property. However,

official authorities must give consideration to local situations and conditions when determining whether any proposed use of a property, such as an old-style residence that has been converted into a rooming house and is in an area adjacent to a growing college, would be violative of a zoning ordinance.

A college area and at least a substantial part of the adjacent or nearby area have their early growth in the construction of college buildings, private homes, and residences. Later come such business and commercial activities as cater mainly to student and immediate local trade, as well as the boarding, rooming, and apartment houses, also sorority and fraternity houses. Some of the larger dwelling houses serve their purpose as such and are then used to accommodate students and become their places of residence while attending college; then comes the residential zoning ordinance with its constitutionally required nonconforming provisions. Here is a fruitful field for a pressure group of residence owners aided by pliant public authority to obstruct the nonconforming owner in the use of his property under the claim that he is making such a change or increase in the nonconforming use as to constitute a violation of the zoning ordinance.

I am quite satisfied that the trial judge, when he visited and inspected the property of respondent, must have been cognizant of the evolution of the college and zoning areas and took that factor into consideration when concluding respondent's use of her dwelling as a rooming house (permissible under the ordinance) would not be anything substantially different in substance if it were used as a fraternity house in the manner disclosed by the evidence submitted to him. I can readily see how, with such a background and the evidence submitted, the trial judge had no difficulty in arriving at the conclusion that the use of the property as and for a fraternity house and home for college students would not be in violation of the ordinance, and that, by its prohibitory action, the city invaded respondent's constitutional rights.

Each case of this character is surrounded by so many conditions and circumstances peculiar to it that a court cannot be safely guided by excerpts taken from opinions of judges out of their settings. Such expressions may have been apt in the light of the situation then before the court, but they can be misleading in other situations and circumstances; they can be helpful in so far as they make reference to rules and principles of law which are generally used and applied in connection with the subject zoning of property.

I have found some assistance in the case of *State ex rel. Modern Lbr. & Millwork Co. v. MacDuff*, 161 Wash. 600, 297 Pac. 733, and the cases cited in the opinion, in my approach to a determination of whether the use of respondent's property as and for the kind of a fraternity house proposed would be in violation of the ordinance. I gather from them that an owner of nonconforming property may not be interfered with if he desires to use it in a somewhat different way than it was used when the ordinance was enacted if such use is not substantially and essentially a departure from the character of the nonconforming use excepted from the operation of such ordinance, the test being whether the property retains substantially the character of use it had at the time of the enactment of the zoning ordinance.

I am in accord with the findings and conclusions of the trial judge that the foregoing test will be met if respondent's property is used as and for a fraternity house in the manner disclosed by the evidence submitted and with the judgment entered.

The judgment should be affirmed.