Stewart, J.
The respondent refused to issue a building permit for the construction of a garage-apartment for the reason that such construction would violate section 8 of the temporary zoning ordinance of Steubenville, which reads as follows:
“Lot Area and Lot Frontage for Dwellings. Every dwelling hereafter erected or moved shall be on a lot that (a) abuts onto a public street the right of way of which is not less than 30 feet, (b) has a lot width at the street line or at the building line of not less than 40 feet and a total lot area of not less than 4,000 square feet; provided, however, that any lot which has less width or less area than here specified but which was a lot of a recorded subdivision or was in separate own *285 ership from adjoining lots on the effective date of this ordinance, may be used for a one-family dwelling.”
Relators’ dwelling entirely conforms to the requirement of the above section. Lot No. 306 is more than 4,000 square feet in area, does front 40 feet on Jeannette Avenue, and such avenue is a public street with a 40-foot right of way.
The two after-acquired tracts of relators contain an area of 6,000 square feet, but of themselves do not front on any street. However, relators make two claims. The first is that their entire real estate is one large lot of more than 10,000 square feet in area, which fronts 40 feet on Jeannette Avenue, and that section 8 of the zoning ordinance does not prohibit the construction of more than one dwelling on such lot. They contend that the provision, “every dwelling hereafter erected or moved shall be on a lot that (a) abuts onto a public street,” does not mean the same thing as a provision, “there shall be'only one dwelling on each lot.”
We agree with the Court of Common Pleas when in its opinion it said, “this would seem to the court a distinction without a difference, ‘every dwelling being hereafter erected shall be on a lot,’ means the same thing as ‘there shall be only one dwelling on a lot.’ ”
Under section 8 of the zoning ordinance it was necessary for the relators to meet all three requirements of the section, namely, the apartment dwelling shall abut on a public street, the lot must have the required width at the street line, and must have the required area. The proposed garage-apartment lacks one of these essential elements in that it does not have a 40-foot frontage on a street, for the newly acquired tracts do not abut on any street.
The second and principle claim of relators, in fact the only one relied upon in their brief in this court, is stated in their brief as follows:
“If a zoning law requires the owner of land to per *286 form an act which he has no power or authority to perform, then is not the zoning law unconstitutional?”
The relators contend that section 8 of the temporary zoning ordinance is unconstitutional. They assert that, since it would be impossible for them and impracticable for the city to construct a public street next to their newly acquired lots, because of the ravine adjoining them, a refusal to allow them to construct an apartment upon such premises denies to them the protection of their property guaranteed by Sections 1, 16 and 19, Article I of the Ohio Constitution, and that section 8 of the zoning ordinance is confiscatory in that it practically prohibits the relators from the utilization of the rear area of their property.
It is now firmly established that zoning ordinances which are not purely fanciful and esthetic but which are reasonable and comprehensive in their application and have reasonable relation to the public health, morals and safety do not violate either the sections of the Ohio Constitution, above referred to, or Section 1, Article XIV of the Amendments to the Constitution of the United States.
In the case of Pritz v. Messer, 112 Ohio St., 628, 149 N. E., 30, the first two paragraphs of the syllabus read as follows:
“Laws enacted in the proper exercise of the police power, which are reasonably necessary for the preservation of the public health, safety and morals, even though they result in the impairment of the full use of property by the owner thereof, do not constitute a ‘taking of private property’ within the meaning of the constitutional requirements as to making compensation for the taking of property for public use and as to the deprivation of property without due process of law.
“An ordinance enacted by a municipality under Article XVIII, Section 3, of the Ohio Constitution, and *287 under Sections 4366-1 to 4366-12, General Code, dividing the whole territory of the municipality into districts according to a comprehensive plan which, in the interest of the public health, public safety and public morals, regulates the uses and the location of buildings and other structures and of premises to be used for trade, industry, residence, or other specific uses, the height, bulk, or location of buildings and other structures thereafter to be erected or altered, including the percentage of lot occupancy, setback building lines, and the area of yards, courts and other spaces, and for such purpose divides the city into zones or districts of such number, shape, and area as are suited to carry out such purposes, and provides a method of administration therefor, and prescribes penalties for the violation of such provisions, is a valid and constitutional enactment.”
If the Steubenville ordinance has any relation to the public health, safety and morals of the community and is comprehensively applicable to the entire city, it is unquestionably a constitutional enactment.
We are of the opinion that it does have such relation and applicability.
If the contention of relators were valid they might well acquire the entire property adjoining the ravine in the rear of their lot No. 306 and build several houses thereon which would have no access from a street save a driveway across relators’ lot. It could scarcely be argued that such a situation would not create a dangerous fire hazard and thus be detrimental to public safety.
In fact, a similar situation was involved in the case of Howland v. Acting Superintendent of Buildings, 328 Mass., 155, 102 N. E. (2d), 423, decided by the Supreme Judicial Court of Massachusetts. In that case How-land owned a lot having a frontage of 60 feet on a street and a depth of 100 feet and on which were three *288 dwelling houses and a three-ear garage. He desired to sell the property and could sell it more advantageously if each house could be sold separately. He therefore proposed to subdivide his lot into three parcels, of which lot “A” would include one house and the garage, having a frontage of less than 39 feet on the street, and a depth of 73 feet. Lot “C” would have a house thereon and would have a frontage of less than 22 feet on the street and a depth of 73 feet. Lot “B” would have a house in the rear of the other two and would be 60 feet by 27 feet in size. This lot would have no frontage on the street and would be reached therefrom only by a proposed private right of way along the boundary between the other two lots. No visible change would result from the proposed subdivision, and the only consequence would be that the ownership would be held by three persons instead of one, and one of the lots would be subject to an easement or right of way for the benefit of the owner of the lot in the rear of the two houses on the street.
Howland had owned all this property prior to the adoption of a zoning ordinance by the city of Cambridge, which provided that in a residence C-l district, in which Howland’s property was located, “the minimum lot area, lot width,” should be “5,000 sq. feet and 50 ft. frontage.”
The ordinance provided further that no buildings should be erected on a lot which did not have frontage on a street at least 20 feet in width, and that no lot should be changed in size or shape so that the height, area or yard requirements in the ordinance were no longer satisfied.
The Cambridge ordinance also provided for nonconforming uses, which provision would be applicable to Howland’s property.
Howland brought his action to compel the granting of his request for permission to subdivide his property *289 as above outlined. He claimed, that the proposed subdivision would in no way change the physical condition' of the property, which had existed before any zoning ordinance was enacted, and that he was entitled to dispose of his property as he saw fit, free from the limitations of the zoning ordinance. The court held, however, that the proposed division of Howland’s property would change the use of his land to one dif • ferent from the previously existing one; that the division of the land would result in a dwelling owned by a person located on a small separate lot in the rear and having no frontage on the street and no access to it except by means of a right of way. over land of others; that the rear dwelling would be isolated; that fire hazards might be increased; and that some, at least, of the consequences might follow, which were intended to be prevented by the requirement of a prescribed area and frontage for lots having buildings.
In answer to Howland’s claim that the zoning ordinance was unconstitutional as applied to him, the court said:
“But the record fails to disclose that the application of the ordinance to the plaintiff is unreasonable, arbitrary, or oppressive. All that appears is that the plaintiff could sell his property more advantageously (how much more does not appear) if he could divide it. A large proportion of the owners of land and buildings affected by zoning ordinances could say with equal truth that their lands would be more sale-able if there were no such zoning ordinances.” See, also, Clemons v. City of Los Angeles, 36 Cal. (2d), 95, 103, 104; 222 P. (2d), 439.
Courts can not pass upon the wisdom of zoning ordinances. The only judicial function is to determine whether such an ordinance is reasonably comprehensive in its application and has a reasonable relation to the preservation of the public health, safety and mor *290 ais, and, where the ordinance is so qualified, its enforcement does not constitute a talcing of private property without compensation or the taking of property without due process of law, within the meaning of constitutional requirements.
Since relators acquired the property, upon which they propose to construct a garage-apartment, after the passage of the zoning ordinance, and since that ordinance does have a relation to the public safety, we are constrained to hold that it is a valid and constitutional enactment.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Middleton, Taet, Hart, Zimmerman and Lamneck, JJ., concur.