[No. 5071-1.   Division One.   May 8, 1978.]

ROBERT H. KELLER, JR., ET AL, *Appellants*, v. THE
CITY OF BELLINGHAM, ET AL, *Respondents*.

*Brett & Daugert* and *Larry Daugert,* for appellants.

*Patrick L. Brock, City Attorney, Lane, Powell, Moss & Miller,* and *Thomas Zilly,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is whether over a million dollars' worth of improvements to Georgia–Pacific Corporation's chlor–alkali plant in Bellingham are in violation of that city's zoning ordinance.

The case arose when a declaratory judgment action was brought seeking to have such improvements declared violative of the zoning ordinance. The case was tried to the court in the Superior Court of the State of Washington for Whatcom County.

The following facts found by the trial court are *not disputed.*

The petitioners, who are the appellants herein, are citizens of Bellingham, Washington, who do not reside by the

plant but share a concern that the Bellingham zoning ordinance be enforced.

Georgia–Pacific operates its chlor–alkali facility in an industrial section of Bellingham which is zoned for heavy manufacturing. The plant, which manufactures liquid chlorine, has been in operation since October of 1965. The chlorine that is manufactured there is used for such purposes as water and sewage treatment and in the manufacture of insecticides, herbicides, textiles, detergents, fuel, metal alloys and plastics.

In April of 1969, the City of Bellingham enacted its zoning ordinance, Bellingham City Code, ch. 20.06. This ordinance prohibited the "[m]anufacture, compounding, processing, refining, treatment, and assembly" of certain "materials and operations," including chlorine, in a heavy manufacturing district zone. Bellingham City Code § 20.06-.122(b)(1). Any existing use which had been established before the 1969 ordinance, and which was prohibited by the ordinance, was declared to be a nonconforming use and not, therefore, in violation of the ordinance. Bellingham City Code § 20.06.027(a)(1).

Section 20.06.027(b) of the ordinance provides in pertinent part:

(1) Any existing use lawfully established prior to April 21, 1969, which is not permitted in the use district in which it is located is declared a nonconforming use and not in violation of this title;

(2) A nonconforming use *shall not be enlarged, relocated or rearranged* after the effective date of the ordinance which made the use nonconforming;

(Italics ours.) The ordinance also provides that storage and freight terminals are permitted uses within heavy manufacturing districts. Bellingham City Code § 20.06.122(b)(4).

The plant includes a cell building which houses cells used to change sodium chloride brine into chlorine and sodium hydroxide through an electrolysis process. Georgia–Pacific stored spare parts in its cell building underneath the existing cells. In order to provide a better opportunity for

cleaning the cell building and to improve mercury control, as required by the Environmental Protection Act and regulations, it constructed a spare parts building at the facility in 1972. This was necessary in order to provide for the storage of spare parts and maintenance equipment outside the cell room and to permit required housekeeping and cleaning improvements within the cell area itself.

The space now used for the storage of spare parts and maintenance equipment within the new storage and spare parts building at the plant is required by various federal and state laws and regulations, and the storage of spare parts and maintenance equipment within the new spare parts building is reasonable under such laws and regulations. The employees' locker room, lunchroom, showers and laundry and the welding shop, paint room and valve testing center now contained in the new spare parts building, were all required by federal and/or state laws and regulations and the space used for such facilities has been reasonable.

Prior to 1972, Georgia–Pacific used five 300–ton chlorine storage tanks in connection with the storage of chlorine prior to shipment. In June of 1973, it installed four additional storage tanks to provide for increased safety and storage. The four chlorine tanks installed in June of 1973 were large, visible tanks which could easily be seen by the public after their construction and placement on the Georgia–Pacific property. The average amount of chlorine stored in the original five tanks was 650.5 tons and 2.17 tanks, resulting in an average use of 43 percent of storage capacity. The average storage in the existing nine chlorine storage tanks has been 964 tons or 3.21 tanks, resulting in an average use of 36 percent of storage capacity. Normally, Georgia–Pacific keeps four or five tanks totally empty (void and with pressure reduced to a vacuum) in order to provide for safety and flexibility of operations.

In October of 1974, Georgia–Pacific issued a press release announcing that it would add six new cells in the existing cell building, adding approximately 36,300 annual tons of new chlorine and caustic soda capacity to the plant. The

press release stated in part that the expansion would cost several million dollars and that the modifications would allow substantial additional production without additional energy or pollution problems.

On November 4, 1974, the Bellingham City Council requested a statement in writing from the city attorney of Bellingham as to the status of Georgia–Pacific's plan for expansion with regard to the zoning ordinance. Then on November 14, 1974, the city attorney sent an opinion letter to the council advising it that "under our zoning ordinance, modernization or improvement of a manufacturing process may be accomplished."

Later, on December 4, 1974, the members of the council visited the plant to determine the nature and extent of the proposed modifications. Thereafter, council members asked the city attorney to enlarge upon his opinion letter in view of the additional information received from Georgia–Pacific concerning the contemplated improvements to the chlor–alkali facility. On January 6, 1975, the city attorney sent the council a second opinion letter. It stated in part that "in my opinion Georgia–Pacific is acting within the bounds of the zoning ordinance in carrying out the contemplated modernization of the Chlorine Plant." This letter was received and filed with the city council at its public meeting on January 6, 1975, and the council did nothing more about the matter. All of this action was reported from time to time in the local press.

In reliance on the nonaction of the city council, and the two opinion letters of the city attorney, as the trial court found, "Georgia–Pacific *intensified* its use of the subject property by adding six new cells within the cell building." (Italics ours.)

The cell building had originally been designed and constructed for space to hold 32 cells. When the original cell building was constructed in 1965, the original building foundation was engineered and additional pilings were installed to permit the later addition of the six new cells which, in part, are the subject of the present litigation. At

all material times, Georgia–Pacific had intended to add the six new cells within its existing cell building.

All of the activity which is the subject of this action took place in a heavy manufacturing zone area of Bellingham. The changes described in petitioners' complaint did not result in any change in the nature or character of the use of the property by Georgia–Pacific. At all material times, Georgia–Pacific continued to use the same property in connection with the operation of its chlor–alkali facility.

A rewind of a rectifier and the addition of a transformer at the plant constituted changes of methodology or technology, the use of more modern equipment and processes and resulted in a more economical consumption of electricity by the plant.

The changes described in petitioners' complaint wherein they sought a declaratory judgment, and which changes are the subject of this litigation, had no significant effect on the neighborhood or surrounding environment as the trial court found.

Neither Georgia–Pacific nor the petitioners ever asked that the board of adjustment, which was set up by the Bellingham zoning ordinance, review and determine the zoning issues involved in the present litigation.

The petitioners in this action have sought no specific relief other than a declaratory judgment adjudging the city attorney's opinions to be in error and the changes by Georgia–Pacific to its plant to be violations of the Bellingham zoning ordinance.

Based on the foregoing facts found, the trial court concluded:

1.

The Court has jurisdiction over the parties and the subject matter of this action.

2.

*The opinions of the Bellingham City Attorney . . . are correct, in that an intensification of a non–conforming use does not constitute a prohibited enlargement, relocation or rearrangement of the use under the Bellingham Zoning Ordinance.*

### 3.

*The City of Bellingham and Georgia–Pacific Corporation are entitled to a declaratory judgment that Georgia–Pacific's installation of six new cells together with the rewind of the rectifiers and the additional transformer do not constitute an enlargement of a non–conforming use under the Bellingham Zoning Ordinance.*

### 4.

The Bellingham Zoning Ordinance permits the storage of chlorine in a heavy industrial district without restriction.

### 5.

Any change in any existing use established prior to the effective date of the Zoning Ordinance which is reasonably required in order to comply with federal or state law or regulation is permitted.

### 6.

*The action of the Bellingham City Council acting in reliance upon the letters of the Bellingham City Attorney was not arbitrary or capricious and the action of the City Council should be sustained.*

(Italics ours.) Conclusions of law Nos. 1–6.

The petitioners appeal from a judgment entered for Georgia–Pacific. They assign error only to conclusions of law Nos. 2, 3 and 6, emphasized above, and to the corresponding portions of the declaratory judgment.

Error has not been assigned to any finding of fact; therefore the trial court's findings of fact must be considered as the established facts of the case. *Colella v. King County,* 72 Wn.2d 386, 388, 433 P.2d 154 (1967); *State v. Lake,* 7 Wn. App. 322, 327, 499 P.2d 219 (1972).

This appeal presents two legal issues.

### ISSUES

ISSUE ONE. Did the Bellingham City Council take such action as would be reviewable only under the arbitrary and capricious standard?

ISSUE TWO. Did the trial court err in determining that the improvements made by Georgia–Pacific to its chlor–alkali plant did not constitute an unlawful enlargement of a nonconforming use?

DECISION

ISSUE ONE.

CONCLUSION. The Bellingham City Council took no action, legislative or otherwise; therefore, the trial court's conclusion concerning the propriety of the council's action is without effect.

At the outset of the discussion of the legal issues, it should be noted that this case does not involve the validity of Bellingham's zoning ordinance but only its interpretation. The ordinance contemplated that questions just such as this were bound to arise from time to time and established a board of adjustment with the expertise to decide them. Bellingham City Code § 20.06.201; RCW 36.70.810; RCW 36.70.820.

The petitioners made no attempt to comply with the administrative procedures established by the zoning ordinance. When an adequate administrative remedy is provided, it must be exhausted before the courts will intervene. *Wright v. Woodard,* 83 Wn.2d 378, 381, 518 P.2d 718 (1974). Circumventing the board of adjustment by filing a declaratory judgment was improper in this case. 4 R. Anderson, *American Law of Zoning* § 28.06 (2d ed. 1977). Since the error did not go to the jurisdiction of the court, however, and since it was invited by the petitioners and concurred in by Georgia–Pacific, it is not reversible error. *Rao v. Auburn Gen. Hosp.,* 19 Wn. App. 124, 130, 573 P.2d 834 (1978).

The petitioners assign error to conclusion of law No. 6, set out above, wherein the trial court concluded that "[t]he action of the Bellingham City Council acting in reliance upon the letters of the Bellingham City Attorney was not arbitrary or capricious and the action of the City Council should be sustained." Georgia–Pacific argues that this was proper and that the council's action cannot be overturned absent a showing of arbitrary and capricious conduct by it. Georgia–Pacific argues *State ex rel. Myhre v. Spokane,* 70 Wn.2d 207, 210–13, 422 P.2d 790 (1967) and other decisions of like import as supporting this position.

■ The fallacy in Georgia–Pacific's argument is that here the council inquired into Georgia–Pacific's plant modification and then did nothing about it, one way or the other. So far as the record before us reflects, the whole matter was just let drop without benefit of any formal motion or resolution of any kind. The council's only function under the zoning code is legislative, Bellingham City Code § 20.06.213, and it makes no administrative determinations concerning code violations. No authority has been cited to us, and we know of none, which holds that in this kind of a situation there is any council action to judicially review. The petitioners' assignments of error directed to conclusion of law No. 6 are well taken, and that conclusion is a nullity.

Issue Two.

Conclusion. The trial court's findings that the improvements to Georgia–Pacific's plant constituted an intensification of the nonconforming use rather than an enlargement of it are supported by substantial evidence and are determinative.

■ Georgia–Pacific's plant is a nonconforming use because it was in existence prior to the effective date of the zoning ordinance. The public policy of this state, as well as the spirit of zoning measures, is to restrict rather than increase such nonconforming uses in order that they ultimately may be phased out. *State ex rel. Miller v. Cain,* 40 Wn.2d 216, 219, 242 P.2d 505 (1952); *Coleman v. Walla Walla,* 44 Wn.2d 296, 299–300, 266 P.2d 1034 (1954); *Anderson v. Island County,* 81 Wn.2d 312, 323–24, 501 P.2d 594 (1972).

It should be noted parenthetically in connection with these three decisions on which petitioners rely, that unlike the present case, *Miller* involved a new and substantially larger building, *Coleman* involved a new nonconforming use and *Anderson* involved changing a residential zone to a commercial zone in order to establish a new use.

Speaking generally of nonconforming uses, one text summarizes as follows:

The standard for determining the extent of an authorized nonconforming use is ordinarily the use that is being carried on the premises at the time of the adoption of the zoning laws. In other words, a nonconforming use must in substance be the same after the passage of a zoning ordinance as it was theretofore. However, the continuance of an existing nonconforming use carries with it all the incidents of that use which appertained to it when zoning laws were enacted. Accordingly, one entitled to a nonconforming use has a right to repair, restore and replace structures in connection with the use, to engage in uses normally incidental and auxiliary to the nonconforming use, and to modernize and employ improved instrumentalities in connection with such use.

(Footnotes omitted.) 8A E. McQuillin, *Municipal Corporations* § 25.200 (3d ed. rev. 1976). And further,

It is the general rule that the employment of modern and more effective instrumentalities, not previously used, in a nonconforming business or use or in connection with a nonconforming building does not constitute a prohibited expansion or enlargement of the business, use or building. In short, an owner can modernize facilities and employ improved instrumentalities in connection with a nonconforming building or use. However, the instrumentalities must be ordinarily and reasonably adapted to make the use in question available to the owner, and, moreover, the original nature and purpose of the undertaking must remain unchanged. Thus, for example, in mining, quarrying and similar types of uses, the introduction of new, mechanized devices and equipment is not an enlargement or extension of the use, but merely a more effective method of carrying it on.

(Footnotes omitted.) 8A E. McQuillin, *Municipal Corporations* § 25.210 (3d ed. rev. 1976).

The zoning ordinance requires that nonconforming uses "not be enlarged, relocated or rearranged after the effective date of the ordinance which made the use nonconforming;" Bellingham City Code § 20.06.027(b)(2). The zoning ordinance thus prevented "enlarging" nonconforming uses.

The zoning ordinance did not, however, prevent "intensifying" nonconforming uses. As one recognized authority explains it,

A nonconforming use of land, whether it is a dairy farm, a manufacturing plant, or a rooming house, is not likely to remain static. As the use is exploited and economic changes occur, it may grow in volume or intensity, and periods of active use may become more frequent or of longer duration. These changes in the level of use may have profound impact upon property in the areas where they are located, but the zoning regulations seldom include specific provisions for restricting this kind of growth.

1 R. Anderson, *American Law of Zoning* § 6.47 (2d ed. 1976). Some zoning ordinances do specifically provide against intensifying nonconforming uses. *See* 2 A. Rathkopf, *The Law of Zoning and Planning* 60–1 (3d ed. 1972). Bellingham's zoning ordinance did not so provide; therefore, we must assume that it did not intend to do so since zoning ordinances are in derogation of the common law and must be strictly construed in favor of the property owner. *Pearson v. Evans,* 51 Wn.2d 574, 576, 320 P.2d 300 (1958).

Here the case was fully tried out in the trial court, the forum sought by the petitioners. The primary issue in that court was whether the improvements to Georgia–Pacific's plant amounted only to an "intensification" of the use, or was an "enlargement" of the use. The testimony before that court included that of Bellingham's planning director of many years. The sum and substance of her testimony was that she was familiar with the improvements to the plant and concurred with the city attorney's opinion which was that Georgia–Pacific acted within the bounds of the zoning ordinance in carrying out its plant modernization. As one of the officials charged with the enforcement of the code, her testimony was entitled to great weight. *Morin v. Johnson,* 49 Wn.2d 275, 279, 300 P.2d 569 (1956); *Ball v. Smith,* 87 Wn.2d 717, 723, 556 P.2d 936 (1976).

The trial court found as a fact that there had been an "intensification" of the nonconforming use. It also determined that there had not been an "enlargement" of

it.[1] There being substantial evidence to sustain the trial court's findings in this regard, they will not be disturbed on this appeal. As expressed by the State Supreme Court in a like situation,

> If we were of the opinion that the trial court should have resolved the factual dispute the other way, the constitution does not authorize this court to substitute its findings for that of the trial court.

*Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959). We have consistently so held. *Charles Pankow, Inc. v. Holman Properties, Inc.,* 13 Wn. App. 537, 542, 536 P.2d 28 (1975).

Affirmed.

JAMES and DORE, JJ., concur.

Reconsideration denied October 17, 1978.

Review granted by Supreme Court February 28, 1979.

---

[1]Whether there is an enlargement of a use is a question of fact. *Jamison v. Kyles,* 271 N.C. 722, 157 S.E.2d 550 (1967); *Application of Hasting,* 252 N.C. 327, 113 S.E.2d 433, 434 (1960). A finding of fact labeled as a conclusion of law will nonetheless be treated as a finding of fact. *Redmond v. Kezner,* 10 Wn. App. 332, 343, 517 P.2d 625 (1973). *Accord, Estes v. Bevan,* 64 Wn.2d 869, 395 P.2d 44 (1964).