[No. 45882. En Banc. October 11, 1979.]

ROBERT H. KELLER, JR., ET AL, *Petitioners*, v. THE
CITY OF BELLINGHAM, ET AL, *Respondents*.

*Brett & Daugert,* by *Larry Daugert,* for petitioners.

*Patrick L. Brock, City Attorney,* for respondent Bellingham.

*Lane, Powell, Moss & Miller,* by *Thomas S. Zilly,* for respondent Georgia–Pacific.

HICKS, J.—This appeal challenges a decision of the Court of Appeals, Division One, upholding the trial court's determination that improvements made by the Georgia–Pacific Corporation (GP) to its chlor–alkali plant do not constitute unlawful "enlargement" of a nonconforming use under the Bellingham zoning ordinance. The facts are set forth with considerable particularity in the opinion of the Court of Appeals. *Keller v. Bellingham,* 20 Wn. App. 1, 578 P.2d 881 (1978). We affirm the Court of Appeals.

In 1965, GP constructed a chlor–alkali facility in an industrial section of Bellingham zoned as a "heavy manufacturing district." Liquid chlorine has been manufactured at the plant since October 1965. Through an electrolysis process, sodium chloride brine is changed into chlorine and sodium hydroxide in devices known as electrolytic cells. The cells are large trough–like structures measuring some 50 feet in length, 5 feet in width and about 1 foot in depth. GP originally designed and constructed its building to accommodate 32 cells, although only 26 were in place when the plant began operations in 1965. At all material times, GP intended to add six cells to the cell building.

April 1969, the Bellingham City Council adopted a zoning ordinance which, among other things, prohibits the "manufacture" of chlorine in a heavy manufacturing zone. Bellingham City Code § 20.06.122(b)(1). Section 20.06-.027(b) of the code provides in part:

(1) Any existing use lawfully established prior to April 21, 1969, which is not permitted in the use district in which it is located is declared a nonconforming use and not in violation of this title;

(2) A nonconforming use shall not be enlarged, relocated or rearranged after the effective date of the ordinance which made the use nonconforming;

GP's chlorine operations were continued as an authorized nonconforming use.

October 1974, in a press release given prominent coverage by the local media, GP announced a plant modernization plan, including *inter alia* the addition of six electrolytic cells to bring the cell building to its design capacity of 32. The added cells were forecast to increase chlorine production by 20 to 25 percent.

November 4, 1974, the Bellingham City Council reacted to the GP announcement by requesting a written statement from the city attorney regarding the permissibility of the proposed plant improvements under the zoning code. The city attorney responded by a letter dated November 14, which concluded that "[u]nder our zoning ordinance, modernization or improvement of a manufacturing process may be accomplished." December 4, 1974, several city council members toured the GP plant and thereafter requested a further opinion from the city attorney. In a second letter opinion, the city attorney concluded "Georgia Pacific is acting within the bounds of the zoning ordinance in carrying out the contemplated modernization of the Chlorine Plant." The city council filed the letter in its January 6, 1975, open meeting and took no further action. All events related above were reported periodically in the local press.

GP proceeded with its plant improvements. The estimated cost of the cell addition was $531,000. Several local citizens commenced an action against the City of Bellingham, which ultimately became a declaratory judgment action. They sought, *inter alia,* an adjudication that the city attorney's letter opinions were erroneous as a matter of law and a declaration that the addition of six electrolytic cells violated the zoning ordinance. Upon stipulation of the parties, GP intervened.

Following a trial to the court, findings of fact and conclusions of law were entered. Although other issues were

raised before the trial court, the sole remaining issue is the legality of the 6–cell addition. The trial judge concluded, as a matter of law, that the letter opinions correctly interpreted the law and the addition of the six electrolytic cells constituted a permitted "intensification" of a nonconforming use, not a prohibited "enlargement" of such use.

On appeal, error was assigned only to the trial court's conclusions of law Nos. 2, 3 and 6. No error was assigned to any finding of fact and the findings must thus be considered verities. *Goodman v. Bethel School Dist. 403,* 84 Wn.2d 120, 124, 524 P.2d 918 (1974). Petitioners do not dispute this posture on review of the case; however, they do assert that the Court of Appeals erroneously held the critical "conclusion of law" to be a "finding of fact", thereby insulating it from appellate review. *See Keller v. Bellingham, supra* at 11, 12 n.1. Petitioners contend they received no appellate review of a genuine issue of law: "whether undisputed facts in this particular case compel the legal conclusion that the acts done at the Bellingham chlor–alkali plant were in violation of the local zoning ordinance." For purposes of this review, we accept the designations of the trial court and we do not characterize the challenged "conclusion of law" as a "finding of fact" as did the Court of Appeals.

Petitioners argue that the facts found by the trial court compel a conclusion that the GP plant modernization constituted prohibited "enlargement" under the zoning ordinance. They premise this argument upon three Washington cases: *State ex rel. Miller v. Cain,* 40 Wn.2d 216, 242 P.2d 505 (1952); *Coleman v. Walla Walla,* 44 Wn.2d 296, 266 P.2d 1034 (1954); and *Anderson v. Island County,* 81 Wn.2d 312, 501 P.2d 594 (1972). Petitioners assert that, considered together these cases demonstrate "this Court's extraordinary tenacity in holding that non–conforming uses must be discouraged, even abated, as opposed to enlarged." They urge that "this doctrine should apply to industrial expansion as well." They argue that under the facts of this

case, the distinction between "intensification" and "enlargement" is a distinction without a difference.

GP contends that its plant modernization is not proscribed under the Bellingham zoning ordinance which provides: "A nonconforming use shall not be enlarged". GP asserts that while the nonconforming use of its plant may have "intensified", it has not "enlarged". The city attorney agreed with this as did the former city planning director who helped draft the ordinance, and the city council. The trial court after hearing the matter de novo concurred in this view and a unanimous Court of Appeals also upheld GP's position.

 While each of the three cases upon which petitioners rely is readily distinguishable from the case at bench,[1] the "doctrine" which petitioners would distill from those cases as applicable to the instant case proves too encompassing. We agree that the spirit of zoning measures is to restrict the extension of nonconforming uses as exemplified in *State ex rel. Miller v. Cain, supra.* Nevertheless, enactments in derogation of the common law are to be strictly construed. *Pearson v. Evans,* 51 Wn.2d 574, 320 P.2d 300 (1958). In endeavoring to accommodate both concerns, zoning ordinances are to be liberally construed to accomplish their purpose, but they are not to be extended beyond the clear scope of legislative intent as manifest in their language. *State ex rel. Standard Mining & Dev. Corp. v. Auburn,* 82 Wn.2d 321, 510 P.2d 647 (1973).

Although phasing out nonconforming uses may be a desirable policy of zoning legislation, the severity of limitations in phasing out such uses is within the discretion of the

---

[1]*State ex rel. Miller v. Cain, supra,* involved construction of a new and substantially larger service station, and *Anderson v. Island County, supra,* involved an amendment changing a residential zone to a commercial zone to permit a new use. Although *Coleman v. Walla Walla, supra,* provides a closer analogy, in that case the court found a *new* nonconforming use. It is not disputed that the instant case involves no change in the nature or character of the use. Unchallenged finding of fact No. 13.

legislative body of the city. *See Bartz v. Board of Adjustment,* 80 Wn.2d 209, 492 P.2d 1374 (1972). It may be said generally:

> A nonconforming use of land . . . is not likely to remain static. . . . [I]t may grow in volume or intensity . . . These changes in the level of use may have profound impact upon property in the areas where they are located, but the zoning regulations seldom include specific provisions for restricting this kind of growth.

1 R. Anderson, *American Law of Zoning* § 6.47 (2d ed. 1976). Although the Bellingham zoning ordinance could have specifically prohibited intensification of a nonconforming use by reference to a specified volume of such use, it did not do so.

In addition, those charged with enforcing the ordinance for the city did not construe the enactment as prohibiting use intensification. Considerable judicial deference is given to the construction of legislation by those charged with its enforcement. *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 536 P.2d 157 (1975); *Morin v. Johnson,* 49 Wn.2d 275, 300 P.2d 569 (1956). After actively examining the GP proposal and soliciting two letter opinions from the city attorney, the legislative body of the city appears to have tacitly approved the GP modernization project as being within the limitations of its ordinance.

When an increase in volume or intensity of use is of such magnitude as to effect a fundamental change in a nonconforming use, courts may find the change to be proscribed by the ordinance. 1 R. Anderson, *supra* at § 6.47; 8 A. McQuillin, *Municipal Corporations* § 25.207 (3d ed. 1976). Intensification is permissible, however, where the nature and character of the use is unchanged and substantially the same facilities are used. *Jahnigen v. Staley,* 245 Md. 130, 137, 225 A.2d 277 (1967). The test is whether the intensified use is "different in kind" from the nonconforming use in existence when the zoning ordinance was adopted. 3 A. Rathkopf, *The Law of Zoning and Planning,* ch. 60–1, § 1 (4th ed. Cum. Supp. 1979). In unchallenged

findings of fact, the trial court found that intensification wrought no change in the nature or character of the nonconforming use by GP. Further, the court found that the intensified use "[has] no significant effect on the neighborhood or surrounding environment."

Finally, if a use is established in part but not all of a building prior to enactment of a zoning ordinance, the right to continue the use as "nonconforming" may not include the right to extend it to other portions of the building. 1 R. Anderson, *supra* at § 6.45. Such extension is permissible, however, if the "design of the structure indicates that at the time of the passage of the zoning restriction it was intended to dedicate the building, in its entirety, to such use." 3 A. Rathkopf, *The Law of Zoning and Planning,* ch. 60, § 5 (4th ed. 1975). By unchallenged finding of fact No. 12, the trial court found:

> In reliance upon the action by the Bellingham City Council, and the opinion letters of the Bellingham City Attorney, Georgia–Pacific has intensified its use of the subject property by the addition of six new cells within the cell building. The cell building was originally designed and constructed for space to hold 32 cells. When the original cell building was constructed in 1965, the original building foundation was engineered and additional pilings were installed to permit the later addition of six new cells which are in part the subject matter of this litigation. At all times material, Georgia–Pacific Corporation had intended to add the six new cells within its existing cell building.

We conclude that Bellingham's zoning ordinance did not specifically proscribe intensification of nonconforming uses. In view of the unanimity of opinion of the officials responsible for the enactment and enforcement of the ordinance, the unchallenged findings of fact and the applicable principles of law, we feel constrained to hold that the trial court did not err in concluding GP's improvements do not violate the Bellingham zoning ordinance.

Affirmed.

WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., and McMULLEN, J. Pro Tem., concur.

WILLIAMS, J. (dissenting)—I disagree with the conclusion reached by the majority. It is clear to me that Georgia–Pacific's addition of six electrolytic cells for the manufacture of chlorine constitutes an enlargement of the nonconforming use in violation of section 20.06.027(b) of the Bellingham City Code.

It bears note that Georgia–Pacific proceeded with its plant improvements *after* the commencement of the action against the City of Bellingham. The six cells were installed at considerable expense despite the pending litigation.

My disagreement with the majority is based on an interpretation of a perfectly clear and unambiguous provision in the zoning ordinance. A court should not depart from the ordinary meaning of the words in a statute absent some ambiguity or statutory definition. *Pope & Talbot, Inc. v. Department of Revenue,* 90 Wn.2d 191, 580 P.2d 262 (1978). By the terms of the ordinance a nonconforming use cannot be enlarged. That is precisely what has occurred in this case. If Georgia–Pacific had increased its production simply by using more efficient methods, employing new techniques or equipment, or by increasing the work force or number of hours of operation, such additional production would clearly result from "intensification" of the nonconforming use. In the present case, however, extra cells were added to the production line. It thus escapes me how the addition of six extra cells can be called anything but an enlargement.

Counsel for the City and Georgia–Pacific admitted during argument before this court that if the six cells had been added to the production line but installed in a separate building, the additions would have in that case constituted an enlargement. They claim, however, that since the additional cells were installed within the same building as the

original 26 cells, the nonconforming use is merely intensified. Such reasoning cannot withstand the most superficial analysis.

The "enlargement" referred to in the ordinance plainly does not mean the enlargement of the building itself or an increase in the number of buildings in use, but refers to the enlargement of the "nonconforming *use*". The use is the manufacture of chlorine, and the enlargement of that use is the increased production resulting from the addition of the six new cells. An analogous example which clearly demonstrates the difference between an enlargement and an intensification would be the operation of a 6–pump gas station as a nonconforming use. If the station increased the number of hours of operation and thus pumped more gas or devised some new modern method of pumping the gas faster out of the tanks that it had, such would amount to an intensification of the use. However, if the gas station added six pumps in order to increase production, there is no question in my mind but that it would constitute an enlargement of the use.

A statute which is plain needs no construction. *Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 587 P.2d 535 (1978); *Purse Seine Vessel Owners Ass'n v. Moos,* 88 Wn.2d 799, 567 P.2d 205 (1977). The ordinance in question here is clear, unambiguous and easy of interpretation. It should therefore be unnecessary to turn to the rules of statutory construction to interpret the ordinance. Nonetheless, the ordinance may be viewed in light of our ruling in *Coleman v. Walla Walla,* 44 Wn.2d 296, 266 P.2d 1034 (1954), where this court stated that the purpose and intent of nonconforming use ordinances was not to allow the enlargement of nonconforming uses but to restrict and ultimately phase them out entirely. The court in *Coleman* quoted from *State ex rel. Miller v. Cain,* 40 Wn.2d 216, 242 P.2d 505 (1952), as follows:

> "'The ultimate purpose of zoning ordinances is to confine certain classes of buildings and uses to certain localities. The continued existence of those which are

nonconforming is inconsistent with that object, and it is contemplated that conditions should be reduced to conformity as completely and as speedily as possible with due regard to the special interests of those concerned, and where suppression is not feasible without working substantial injustice, that there shall be accomplished "the greatest possible amelioration of the offending use which justice to that use permits." "The accepted method of accomplishing this result is as follows: The nonconformity is in no case allowed to increase. It is permitted to continue until some change in the premises is contemplated by the owner, when, in so far as expedient, the authorities take advantage of this fact to compel a lessening or complete suppression of the nonconformity."'"

*Coleman v. Walla Walla, supra* at 299. The City Council of Bellingham for what I assume were valid reasons has rezoned the area in question so as to prohibit the manufacture of chlorine. Pursuant to the reasoning expressed in *Coleman,* the permission to operate the plant as a nonconforming use should be interpreted as a mere *toleration* of the manufacture of chlorine in the area, and such toleration should not be construed as permission to increase and enlarge the nonconforming use so as to perpetuate it.

By misinterpreting the word "intensification", the court has reached a decision which is contrary to the plain meaning and intent of the nonconforming use ordinances. I would reverse.

UTTER, C.J., and ROSELLINI and DOLLIVER, JJ., concur with WILLIAMS, J.