[No. 43938.  En Banc.  July 21, 1977.]

PURSE SEINE VESSEL OWNERS ASSOCIATION, ET AL,
*Respondents,* v. DONALD W. MOOS, ET AL,
*Appellants.*

*Slade Gorton, Attorney General,* and *James M. Johnson, Assistant,* for appellants.

*Joseph T. Mijich, Jacob A. Mikkelborg,* and *Charles E. Yates,* for respondents.

*Stan Pitkin* on behalf of United States and *Alan C. Stay* on behalf of Nooksack and Suquamish Indian Tribes, amici curiae.

ROSELLINI, J.—This is an appeal by the Washington State Department of Fisheries and its director, Donald W. Moos, from a judgment of the Thurston County Superior Court. The facts are stipulated by the parties.

The respondents asked the court to declare that certain regulations adopted by the department were beyond the scope of its authority. After a hearing, the Superior Court entered a preliminary injunction suspending the regulations.

Thereafter, on August 6, 1975, the Federal District Court ordered a stay of further state court proceedings. Finding this order ineffective to deprive it of jurisdiction, the Superior Court conducted a hearing on the merits and determined that the special regulations made pursuant to a federal district court order were invalid. On September 23, 1975, we denied a motion to stay the judgment of the trial court.

Fishing within certain United States convention waters of the Straits of Juan de Fuca and northern Puget Sound is regulated by the International Pacific Salmon Fisheries Commission (hereinafter referred to as the IPSFC). This commission was created pursuant to a convention between the United States and Canada. It was given the power to regulate the harvest of the Fraser River sockeye salmon run. IPSFC regulations are drawn by three representatives of each member country and are approved by the respective governments.

A federal statute (16 U.S.C. §§ 776–776f (1974)) provides that commission regulations may be enforced by state or federal officers. RCW 75.40.060 authorizes the director to adopt and enforce the regulations of the IPSFC. Historically the regulations have been adopted as state regulations, and infractions have been treated as violations of state law.

In 1975, regulations were set by the IPSFC, approved by the United States through the State Department, and forwarded to the Fisheries Department for adoption. They were adopted by order No. 1210.

There are three types of gear utilized in fishing these waters: reef nets, gill nets, and purse seines. In part because of gear conflicts, different fishing times are assigned to the various types of gear. For example, where 71 hours of total fishing are allowed per week, purse seines can be used only during certain daylight hours, gill nets only during certain nighttime hours, and reef nets during specified hours.

The Federal District Court formulated a regulation which allowed treaty Indians to utilize their fishing gear, irrespective of type, for this entire 71–hour period. Other gill–netters and purse seiners, under the regulation made pursuant to the IPSFC treaty, were restricted to 33 hours of fishing. In one area where the commission allowed fishing only 2 days per week, the court allowed at least 5 days' fishing for treaty Indians. This latter provision was later suspended. The director by order No. 1244 adopted the Federal District Court's regulations. This order was obviously in conflict with the regulations of the IPSFC.

Thereafter, it appears that a State Department official took steps to temporarily and partially withdraw the United States' approval of the IPSFC regulations. There appears to have been put before the federal court a Xerox copy of a handwritten communication from a Deputy Assistant Secretary of State for Oceans and Fisheries Affairs, which stated:

I hereby withdraw for the government of the United States of America the approval given on April 11, 1975, to those parts of the regulations of the [IPSFC] transmitted by letter of February 24, 1975, which allocate open fishing times among the various type[s] of gear within United States convention waters.

Requests for special treatment of treaty Indians had been denied by the commission, which published its regulations for 1975 in the traditional format. When the executive branch of the United States government confirmed and adopted these regulations, it was apparently aware of the decision in *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd*, 520 F.2d 676 (9th Cir. 1975), *cert. denied*, 423 U.S. 1086, 47 L. Ed. 2d 97, 96 S. Ct. 877 (1976), and of the denial of Indian requests for special treatment in respect to the Fraser River fishery.

The position of the IPSFC and the Canadian government was that the treaty could not be unilaterally modified.[1]

It is stipulated by the parties that order No. 1244, giving the treaty Indians unlimited fishing rights during the 71–hour fishing week, was adopted, not for the purpose of conservation, but only to accommodate the federal judge's order.[2]

[2]To illustrate that the state courts have sought to practice comity and avoid conflict with the federal courts in Indian fishing litigation, we quote the following from the opinion of the trial judge:

Approximately one year ago several similar cases came before another department of this Court in which similar relief was sought by plaintiffs. Those cases were entitled: Washington State Commercial Passenger Fishing Vessel Association v. Thor Tollefson, et al. (Thurston County Cause No. 50370); Washington Kelpers Association v. Thor Tollefson, et al. (Thurston County Cause No. 50552); and Puget Sound Gillnetters Association, Bob Christensen, Purse Seine Vessel Owners Association and Richard C. Johnson v. Thor Tollefson, et al. (Thurston County Cause No. 50757). In these cases the plaintiffs sought temporary and permanent relief enjoining orders of the then Fisheries Director, Thor Tollefson, which orders allegedly reduced fishing opportunities for non–Indian fishermen in certain areas of the State. Judge Hewitt A. Henry, who was presiding when these cases first came to this Court's attention, as a matter of comity, sought to determine the views of the United States District Court in order to ascertain if that Court was claiming exclusive jurisdiction over these matters. A transcript of the views of the Honorable George Boldt,

Before considering the legality of the department's regulations promulgated in response to the order of the federal court, we must examine the impact of the federal court's stay order.

The question before the lower state court was one of state law. It had been the director's position in the federal court that the regulations which he was directed to adopt would be beyond his authority if they varied from the regulations of the IPSFC, unless they were designed to achieve ends within his statutory authority, such as the conservation of fish species destined for Washington streams. The question before the Superior Court for Thurston County was properly within its jurisdiction, inasmuch as it was asked to decide whether the director had the statutory authority to adopt any regulation contrary to the commission regulation.

■ A fundamental principle of our constitutional system of government is that there is conferred upon the state the right to determine authoritatively the powers delegated to state officials and to determine whether state officials are using these powers lawfully.

In *Puget Sound Gillnetters Ass'n v. Moos,* 88 Wn.2d 677, 565 P.2d 1151 (1977), we held that the determination of the extent of a state official's authority to act is solely and exclusively within the jurisdiction of the state courts.

We find that the Federal District Court's injunction was ineffective to stay the state court proceedings for the following reasons.

The request for the injunction to stay the trial court proceeding was by oral motion in open court on the day it was issued, and no notice of any kind was given to any of the parties or the trial court.

in response to Judge Henry's query, was forwarded to this Court and the response appeared to indicate that Judge Boldt believed that the State Courts had jurisdiction to hear these cases which involve many of the same issues we are herewith concerned. In short, the principle of comity was recognized and our Court only assumed jurisdiction after soliciting the views of the United States [District] Court.
(Footnote omitted.)

■ Even where a temporary injunction is issued, Fed. R. Civ. P. 65(a) requires that notice first be given to the "adverse party"—presumably the party to be enjoined. Assuming that a state superior court is subject to an injunction issued by a federal district court, the court at least should be given notice so that it can be represented at the hearing on the motion.

The entering of an injunction without notice has been declared to be improper in numerous cases, including *Consolidated Coal Co. v. Disabled Miners*, 442 F.2d 1261 (4th Cir. 1971), and *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.*, 446 F.2d 353 (5th Cir. 1971).

■ The anti–injunction statute, 28 U.S.C. § 2283 (1965), prohibits a court of the United States from granting an injunction staying proceedings in a state court. It provides exceptions (a) where expressly authorized by an act of Congress, and (b) where necessary in aid of its jurisdiction or to protect or effectuate its judgment. There was no attempt here to deprive the federal court of its jurisdiction over federal questions. The trial court clearly has jurisdiction to determine the statutory authority of a state agency and the lawfulness of its regulations.

The United States, as amicus, has drawn our attention to the fact that the United States Supreme Court has held that the federal courts are not restricted by the provisions of the anti–injunction statute when a stay of state court proceedings is sought by the United States, as appears to have been the case here. The leading case cited is *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 1 L. Ed. 2d 267, 77 S. Ct. 287 (1957). That case, read in its entirety, supports the trial court in its assumption of jurisdiction. While the United States Supreme Court held that a state court action could be stayed even though neither of the exceptions mentioned in 28 U.S.C. § 2283 (1965) was present, it nevertheless looked to see whether the injunction was properly issued in the case. Although it held that the Federal District Court should retain jurisdiction, it further held that that court should defer to the state court

upon a question of state statutory interpretation. The court said:

> Before attempting to answer [questions concerning the interpretation of the statute] and to decide their relation to the issues in the case, we think it advisable to have an interpretation, if possible, of the state statute by the only court that can interpret the statute with finality, the Louisiana Supreme Court.

*Leiter Minerals, Inc. v. United States, supra* at 229. The court suggested that the state's declaratory judgment procedure should be utilized for that purpose.

Thus, the United States Supreme Court has approved the determination of questions concerning the meaning of state statutes by state courts, even where they may be at issue in a case in which the federal court has properly assumed jurisdiction. It is evident that, under this holding, the Federal District Court should have sought an answer to the questions involving the interpretation of this state's statutes from the courts of this state, before proceeding to issue orders which involved the department's statutory authority. The certification procedure provided in RCW 2.60 affords a simple and practical way of obtaining such answers. *See In re Elliott,* 74 Wn.2d 600, 446 P.2d 347 (1968). Had this procedure been followed, much litigation and the attendant conflict between the federal and state courts upon these questions would have been avoided.

The *Leiter* result is in harmony with, if not indeed demanded by, the rule that the federal district courts are bound to abstain from deciding an issue regarding an unsettled question of state law (here, the extent of the director's statutory authority), until the state courts are given an opportunity to decide the question. In *Reetz v. Bozanich,* 397 U.S. 82, 25 L. Ed. 2d 68, 90 S. Ct. 788 (1970), the Supreme Court reaffirmed this statement from its opinion in *Meridian v. Southern Bell Tel. & Tel. Co.,* 358 U.S. 639, 640, 3 L. Ed. 2d 562, 79 S. Ct. 455 (1959).

> Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law

be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. . . . That is especially desirable where the questions of state law are enmeshed with federal questions.

We conclude that the federal court's stay issued to the Thurston County Superior Court was ineffective to deprive that court of jurisdiction over the question before it, which involved the interpretation of state statutes and could only be authoritatively decided by state courts.

We turn to the question whether the director can issue orders or regulations which do not conform to the regulations of the commission.

Pursuant to enforcement requirements (Article X) of the convention of 1937 between the United States and Canada, as supplemented by the Pink Salmon Protocol of 1957, Congress enacted 16 U.S.C. §§ 776–776f (1974), which provides for enforcement of the commission's regulations in United States convention waters by federal authorities or by state officers with federal authority so to act.

As we have mentioned earlier, it has been the practice to enforce the commission's regulations through state action. The applicable statute is RCW 75.40.060, which provides:

> The director and duly authorized agents are hereby authorized to adopt and to enforce the provisions of the convention . . . and the regulations of the commission promulgated under authority of said convention.

It should be obvious that the authority to "adopt and enforce" does not include the authority to alter. It should not require repeating that statutes must be interpreted in accordance with the intent of the legislature. *State v. Lake City Bowlers' Club, Inc.*, 26 Wn.2d 292, 173 P.2d 783 (1946). Certain fundamental principles guide the court in determining such intent. A statute which is plain needs no construction. The court will not read into a statute matters which are not there nor modify a statute by construction. In construing a statute, words must be given

their usual and ordinary meaning. *King County v. Seattle,* 70 Wn.2d 988, 991, 425 P.2d 887 (1967).

What is the meaning of the word "adopt" as used in this context? According to *Webster's Third New International Dictionary* (1968), the word "adopt" as used in this context means: "to accept formally: acknowledge or enact as true, wise, fitting, germane . . . to endorse and assume official responsibility for". In *Albany v. Nix,* 21 Ala. App. 164, 106 So. 199 (1925), a case cited in Black's Law Dictionary 70 (4th ed. 1968), it was said with respect to the adopting of a code, that the legislature's employment of such words imports an intention to incorporate into a statute, or to enact and make of force as a statute, *"every provision in the entire work . . . under consideration."* (Italics ours.)

2 C.J.S. *Adopt* (1972), states at page 412:

[When] [u]sed with reference to statutory provisions, the word [adopt] may be employed as meaning to enact and make of force, to incorporate into the enacting clause, or *to make as part of one statute that which had been created in another as distinguished* from [another].

(Footnotes omitted. Italics ours.)

RCW 75.40.060 is therefore plain in its intent and needs no construction. The director is authorized to incorporate in the department's regulations every provision in the commission's regulations and to do no more than that.

Authority to adopt the commission's regulations, therefore, is not authority to substitute provisions allowing choice of fishing gear for provisions limiting the type of gear which may be used at any given time.

We are told that in order to implement its decision relating to Indian treaty fishing rights in *United States v. Washington,* 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd,* 520 F.2d 676 (9th Cir. 1975), *cert. denied,* 423 U.S. 1086, 47 L. Ed. 2d 97, 96 S. Ct. 877 (1976), the Federal District Court can compel the director to promulgate regulations which are beyond his authority under state law. This proposition is untenable. The Department of Fisheries is solely

a creature of the legislature. Its director cannot be compelled to do an act which is beyond the authority granted to him by the legislature which created his office and designated his powers and duties.

Administrative agencies are creatures of the legislature without inherent or common–law powers and may exercise only those powers conferred either expressly or by necessary implication.

*State v. Pierce,* 11 Wn. App. 577, 581, 523 P.2d 1201 (1974). *Accord, State ex rel. Eastvold v. Maybury,* 49 Wn.2d 533, 304 P.2d 663 (1956).

The question whether the federal government can compel state officials to promulgate and enforce regulations was considered by the Ninth Circuit Court of Appeals in *Brown v. Environmental Protection Agency,* 521 F.2d 827, 841 (9th Cir. 1975). It was there held that the Administrator of the Federal Environmental Protection Agency could not compel California state officials to promulgate regulations pursuant to the Federal Clean Air Act. The court quoted and approved these words from a law review article of Professor Henry M. Hart, Jr., *The Relations Between State and Federal Law,* 54 Colum. L. Rev. 515–16 (1954):

"'And we think it clear,' said Chief Justice Taney in the latter case [*Kentucky v. Dennison,* 65 U.S. (24 How.) 66, 16 L. Ed. 717 (1860)], 'that the Federal Government, under the Constitution, has no power to impose on a State officer, as such, any duty whatever, and compel him to perform it.' Taney's statement can stand today . . ."

In *Brown,* the court continued:

Lower federal courts may *prohibit* state officers, in their individual capacity, from taking action under color of office in violation of law. But an action to compel the performance of an affirmative act would encounter, ordinarily, the bar of the Eleventh Amendment.

*Brown v. Environmental Protection Agency, supra* at 841.

We said in *Puget Sound Gillnetters Ass'n v. Moos, supra* at 687: "The courts have been consistent in recognizing that a state official cannot be compelled to exceed his authority."

In light of these principles, it can be seen that the question whether the United States has abrogated the regulation of IPSFC is immaterial. Under the applicable statutes, the only authority of the director was to adopt the regulations of the commission. He was given no power to expand, diminish, or alter them in any respect. Assuming that the commission's regulations were suspended in part, the federal court still could not compel the state official to act beyond his statutory authority.

██ ██ We held in *Puget Sound Gillnetters Ass'n v. Moos, supra,* that the director cannot discriminate in the allocation of fisheries within the same class of fishermen using the same type of gear. We observed that RCW 75.08-.080 delineates the methods by which the department can comply with the guidelines set forth in RCW 75.08.020. Nowhere does the section authorize the director to allocate fish among claimants for purposes other than conservation. We said:

> But were we to assume that the Department of Fisheries has the authority to adopt regulations designed for the purpose of allocating fish among competing claimants, we would be confronted by constitutional provisions which stand in the way of its doing so in a manner which discriminates among fishermen of the same class.
>
> Since Indians are citizens of the United States and of this state—and not citizens of a foreign power—they are subject to the constitutions of these governments. The restrictions which these documents place upon governmental action apply to actions taken with regard to these citizens. Thus, they can neither be denied equal protection of the laws nor granted special privileges and immunities. Classification which distinguishes between commercial and noncommercial fishermen has a reasonable basis in fact, which is related to the legitimate governmental purposes of conservation and promotion of the economic welfare of the state. Distinctions between fishermen based upon their race or ethnic background are not proper. Treaties protecting Indian rights in the state's natural resources should be read so as to harmonize their provisions with constitutional mandates if this can reasonably be done. We think the construction which

this court placed upon the words "in common with" in the case of *Department of Game v. Puyallup Tribe, Inc.*, 86 Wn.2d 664, 548 P.2d 1058 (1976), achieves this purpose, and accords with the intent expressed in the treaties.

*Puget Sound Gillnetters Ass'n v. Moos, supra* at 684.

It is unreasonable in a free society for courts to grant special rights in perpetuity to a class of citizens based solely on ancestral circumstances. It has proven disruptive to the peace of state, unjust to its citizens, and contrary to those provisions of the federal and state constitutions which are designed to promote equality.

The Superior Court, having jurisdiction to decide the question, correctly determined that order No. 1244, which the Director of Fisheries adopted pursuant to the Federal District Court's direction, was invalid.

The judgment of the trial court is hereby affirmed.

WRIGHT, C.J., HAMILTON and BRACHTENBACH, JJ., and ARMSTRONG, J. Pro Tem., concur.

HOROWITZ, J. (dissenting)—The central issue raised in the instant case is the validity of order No. 1244 of the Director of the Department of Fisheries of the State of Washington. That order, subject to what is later stated, adopts regulations promulgated by the International Pacific Salmon Fisheries Commission (IPSFC) covering the 1975 fishing season for the taking of sockeye and pink salmon in convention waters, pursuant to the 1937 Convention between the United States and Canada "for the protection, prevention and extension of the sockeye salmon fishery of the Fraser River system" (50 Stat. 1355) as amended in 1957 to include pink salmon as well. 8 U.S.T. 1058.

Appellants, State of Washington, Department of Fisheries and its director contend order No. 1244 is valid under RCW 75.40.060; respondents contend to the contrary, relying on RCW 75.08.012. The resolution of the issues raised by these contentions as later appears, depends on the legal effect of the withdrawal on July 19, 1975, of consent on

behalf of the United States to that portion of the IPSFC regulations "which allocate open fishing times among the various types of gear within the United States convention waters." Joint exhibit 37.

Appellants, before reaching the issues on the merits, call attention to the presence of a threshold question. As appellants explain:

> There still remains, however, the jurisdictional question whether that federal court order divested the state superior court of jurisdiction to continue to judgment.

Brief of appellants at 21.

The August 6, 1975, order of the United States District Court stays the trial court's July 23, 1975, temporary injunction as modified August 1, 1975, and, "pursuant to 28 U.S.C. § 2283" enjoins and stays further proceedings in the instant case pending further order of the Federal District Court. Appellants take no position on this question other than to contend, as do respondents, that the August 6, 1975, order, which appellants have appealed to the Court of Appeals for the Ninth Circuit, is erroneous because in violation of 28 U.S.C. § 2283 and Fed. R. Civ. P. 65. Because the majority opinion adopts the shared position of appellants and respondents as described, it is necessary to give further consideration to that position.

It should first be noted that in the appeal taken by the State of Washington Department of Fisheries and its director, to the Court of Appeals for the Ninth Circuit from the stay order and injunction of August 6, 1975, entered by the United States District Court, the issues in the instant case are likewise raised before the Court of Appeals for the Ninth Circuit. That appeal is pending. Until that appeal is decided, it would be premature to decide what legal effect, if any, the disposition of the appeal in the Court of Appeals for the Ninth Circuit has upon the disposition of the appeal in the instant case.

It should also be noted the instant case concerns the IPSFC regulations for the 1975 fishing season and not the 1976 or 1977 fishing seasons. The IPSFC regulations are

adopted on an annual basis. The 1976 regulations, according to the brief for the United States in the appeal pending before the Court of Appeals for the Ninth Circuit, have been modified by mutual consent of the United States and Canada. That brief points out at pages 18 and 43, the 1976 regulations include the following provision not contained in the 1975 regulations: "Insofar as the foregoing regulations prescribe the type of gear to be used during times open to fishing for sockeye and pink salmon, such regulations shall . be implemented to the extent permissible under the law of the Parties." This new provision could eliminate the problem which resulted in this litigation.

No party to the instant appeal asks the issues raised concerning the 1975 fishing season not be decided because moot by virtue of the change made in the 1976 regulations. In view of the fact, however, that the interpretation of RCW 75.40.060 and its relation to RCW 75.08.012 are matters that may again arise, the statutes raising issues of great public importance, I think it to be in the public interest to decide the issues raised on this appeal.

The resolution of the issue appellants describe as the trial court's jurisdiction to proceed to judgment depends upon whether the trial court had a right to disregard the August 6, 1975, stay and injunction order of the United States District Court. That order was issued after the trial court issued a temporary injunction enjoining enforcement of order No. 1244, but before commencement of the trial on the merits in the instant case, and before entry of the appealed judgment, dated September 19, 1975. The validity of the August 6, 1975, order depends upon whether that order was issued, as the majority opinion argues, in violation of the anti–injunction act, 28 U.S.C. § 2283 (1965) and Fed. R. Civ. P. 65(a)(1).

First, 28 U.S.C. § 2283[3] has no application because the

---

[3]28 U.S.C. § 2283 reads:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

United States—not a private litigant—seeks to enjoin a state court from proceeding with the trial of a case. *Mitchum v. Foster,* 407 U.S. 225, 235–36, 32 L. Ed. 2d 705, 92 S. Ct. 2151 (1972); *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 144–47, 30 L. Ed. 2d 328, 92 S. Ct. 373 (1971); *Leiter Minerals v. United States,* 352 U.S. 220, 1 L. Ed. 2d 267, 77 S. Ct. 287 (1957).

In *Leiter Minerals* at pages 225–26, the court explained why section 2283 did not apply.

The court said:

> In this case, there is no legislative material to support or to gainsay the applicability of the rule of construction. There is, however, a persuasive reason why the federal court's power to stay state court proceedings might have been restricted when a private party was seeking the stay but not when the United States was seeking similar relief. The statute is designed to prevent conflict between federal and state courts. This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest. The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283 would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283 alone. It is always difficult to feel confident about construing an ambiguous statute when the aids to construction are so meager, but the interpretation excluding the United States from the coverage of the statute seems to us preferable in the context of healthy federal–state relations.

Second, the federal court injunction is within an exception stated in section 2283, namely, "where necessary in aid of its jurisdiction, or to protect or effectuate its judgment."

The August 6, 1975, federal court stay and injunction order states:

1. The Court finds and concludes that it is necessary, in aid of this Court's jurisdiction, to protect and effectuate the judgment of this Court and to give rights guaranteed Plaintiff Indian tribes by Congressional approved treaties their intended scope, pursuant to 28 U.S.C. 2283, to stay and enjoin further proceedings in the Superior Court of the State of Washington for Thurston County.

The judgment to which the above quoted paragraph and the August 6, 1975, order refers is the declaratory judgment and injunction entered in *United States v. Washington,* 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd,* 520 F.2d 676 (9th Cir. 1975), *cert. denied,* 423 U.S. 1086, 47 L. Ed. 2d 97, 96 S. Ct. 877 (1976), together with implementing orders which ultimately culminated in the promulgation order No. 1244, above referred to.

Third, neither the respondents, nor the trial court which is not a litigant in the instant case, availed themselves of the remedy given in the August 6, 1975, stay and injunctive order to apply to the United States District Court for relief. Paragraph 4 of the August 6, 1975, order reaffirms the trial court's findings of fact, conclusions of law and order of July 16, as amended. This includes the July 19, 1975, fourth supplemental findings of fact, conclusions of law and decree. The latter expressly provides:

Any party hereto or *any other person aggrieved* by any action or failure to act on the part of another party pursuant to this Decree shall bring the matter to this Court for an appropriate Order to implement the requirements of this Decree. Consideration of such matters will be given on a highly expedited basis by the Court . . .

Joint exhibit 13, at 12. (Italics mine.)

Respondents have never availed themselves of the remedy provided. Instead, in disregard of the August 6, 1975, order, they contended that that federal court order was improper. The trial court, with notice of that order, proceeded to disregard it, later entering the appealed judgment of September 19, 1975.

The majority then argues the federal court should have first availed itself of the certificate procedure under RCW

2.60 to determine whether under state law, the Director of Fisheries was authorized to promulgate order No. 1244. The federal court, however, may, but is not required to certify a question of local law. RCW 2.60.020. Indeed, it may decide not to do so, if otherwise applicable, because of the need for prompt action and to save expense. M. Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U. Pa. L. Rev. 1071, at 1129 (1974). *See also* A. Ashman, J. Alfini, R. Shapiro, *Federal Abstention: New Prospectives on its Current Vitality,* 46 Miss. L.J. 629 (1975).

The United States District Court was faced with the necessity of determining whether the IPSFC regulations had been changed by the withdrawal of consent by the United States to a portion of those regulations. The question of the effect of the withdrawal of consent was not a question of local law but, as appellants point out, was a federal political question for the United States and Canada to work out together. *Baker v. Carr,* 369 U.S. 186, 212, 7 L. Ed. 2d 663, 82 S. Ct. 691 (1962); *Ex parte Peru,* 318 U.S. 578, 87 L. Ed. 1014, 63 S. Ct. 793 (1943); *Holmes v. Laird,* 459 F.2d 1211, 1220 (D.C. Cir. 1972), *cert. denied,* 409 U.S. 869, 34 L. Ed. 2d 120, 93 S. Ct. 197 (1972); *Chae Chan Ping v. United States,* 130 U.S. 581, 32 L. Ed. 1068, 9 S. Ct. 623 (1889). In *Chae Chan Ping* the court said at page 602:

> The question whether our government is justified in disregarding its engagements with another nation is not one for the determination of the courts. This subject was fully considered by Mr. Justice Curtis, whilst sitting at the circuit, in *Taylor* v. *Morton,* 2 Curtis, 454, 459, and he held that whilst it would always be a matter of the utmost gravity and delicacy to refuse to execute a treaty, the power to do so was prerogative, of which no nation could be deprived without deeply affecting its independence; but whether a treaty with a foreign sovereign had been violated by him, whether the consideration of a particular stipulation of a treaty had been voluntarily withdrawn by one party so as to no longer be obligatory upon the other, and whether the views and acts of a foreign sovereign, manifested through his representative,

had given just occasion to the political departments of our government to withhold the execution of a promise contained in a treaty or to act in direct contravention of such promise, were not judicial questions; that the power to determine them has not been confided to the judiciary, which has no suitable means to execute it, but to the executive and legislative departments of the government; and that it belongs to diplomacy and legislation, and not to the administration of existing laws.

For each of the reasons reviewed, 28 U.S.C. § 2283 was not violated.

The majority's argument, contained in footnote 2, that the United States District Court had given its consent to the trial court proceeding with the trial on the merits, is not justified. As appears from the quoted portion in footnote 2, the trial court referred to a statement made in trial court cases other than the instant case which involves the 1975 IPSFC salmon fishing regulations. The federal court, prior to issuing its August 6, 1975, order would not have stated the instant case should first be heard by the state courts. The United States District Court had already assumed jurisdiction and had twice directed the Washington Department of Fisheries to rescind its regulations which failed to conform to its decision and implementing orders in *United States v. Washington, supra.*

Moreover, in the excerpt quoted in footnote 2, reference is made to Washington State Commercial Passenger Fishing Vessel Ass'n v. Tollefson (Thurston County cause No. 50370), as supporting the assumption of jurisdiction by the trial court in the instant case. In that case, however, the United States District Court was careful to state (Plaintiff's exhibit 47):

Assuming without deciding—although I think there is little doubt—that this court has jurisdiction of that matter, I intend to abstain from exercising that jurisdiction until the state courts have had a reasonable opportunity to promptly hear and determine the matter in issue. Although I doubt that it will arise, *if and when it should appear that this court should take some part in that*

*subject matter, I will consider it if a party in this case applies for it.*

(Italics mine.)

Footnote 2 of the majority opinion does not support the claim that the United States District Court had unconditionally consented to the assumption of jurisdiction to adjudicate the validity of order No. 1244 and related matters.

The trial court made the statement quoted in footnote 2 because it evidently recognized its obligation under principles of comity to defer to the jurisdiction of the United States District Court—the court that had first acquired jurisdiction. *See State ex rel. Missouri Pac. R.R. v. Williams,* 221 Mo. 227, 255–59, 120 S.W. 740 (1908). The trial court mistakenly assumed (1) that prior trial court cases in footnote 2 indicated advance approval of the trial court's assumption of jurisdiction and that (2) respondents, and even the trial court, had no remedy in the United States District Court. Statement of facts at 10. The trial court failed to note the United States District Court had provided a remedy in that court to "any person aggrieved" by the August 6, 1975, order whether or not such a person was a party to that order (or to the judgment and decree in *United States v. Washington, supra*) and also failed to note the other trial court cases cited in footnote 2 involved a difference context—and even then Washington State Commercial Passenger Fishing Vessel Ass'n v. Tollefson, was accompanied by reservation of jurisdiction.

The remaining procedural objection is that the August 6, 1975, order of the United States District Court was entered in violation of Fed. R. Civ. P. 65. Fed. R. Civ. P. 65(a)(1) requires notice of a preliminary injunction to the "adverse party." The majority argues the trial court is the adverse party although not a litigant in the instant case—the parties hereto being the sole litigants—and should have received advance notice. The position of the appellants and of the United States, the latter requesting the entry of the

August 6, 1975, order, and the evidence on which that position is based cannot be ascertained in the instant case because the federal court record is not before us. The United States is not a party to the instant case. Its answer to the objections raised by the parties hereto is however important and we must look for that position in the brief for the United States, filed in the Court of Appeals for the Ninth Circuit, in response to the brief of the State of Washington Department of Fisheries and its director, in their appeal from the federal court order of August 6, 1975. That brief states in footnote 16:

At no time during the hearing did the State's counsel object to the lack of notice to the state court, nor did he ever request a continuance in order to allow the state court to appear, if it so desired. To this date, the state court has never sought to appear in the federal proceedings to contest the stay. Under these circumstances, we question the defendants' standing to challenge the sufficiency of notice to the state court, where that court has not chosen to assert its alleged grievance and where the defendants do not complain of lack of notice to themselves.

The brief also states at 33:

First, the State of Washington was present and represented by its Assistant Attorney General, who argued against the stay and in support of the state court proceedings.

The brief continues at 34–35:

Second, defendants have cited no case, statute or rule, nor do we know of any, which requires separate notice to the state court or judge about to be enjoined. No doubt this is because the stay, although nominally directed against the state court, is in fact aimed at the *parties* to the state court action. Here, the parties to the state court action are also parties to the federal action, and, as such, receive notice of all hearings in the federal action, are free to participate in all proceedings, and, as noted earlier, did, in fact, do so through the State of Washington's counsel.

I cannot say that the United States' position reviewed, if correctly reflecting the evidence contained in the federal court record on which the August 6, 1975, order is based, lacks merit. *See Thomason v. Cooper,* 254 F.2d 808, 810–11 (8th Cir. 1958). The remedy of "any person aggrieved" was to apply to the United States District Court for relief from any error claimed. *See Doe v. Ceci,* 517 F.2d 1203 (7th Cir. 1975). Indeed, such a remedy was incorporated by reference in paragraph 4 of the August 6, 1975, order giving any aggrieved party a remedy to obtain relief whether or not a party to the case of *United States v. Washington,* 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd,* 520 F.2d 676 (9th Cir. 1975), *cert. denied,* 423 U.S. 1086, 47 L. Ed. 2d 97, 96 S. Ct. 877 (1976) or to the July 16, 1975, order as amended, or to the August 6, 1975, order. Joint exhibit 13, at 12.

The trial court improperly disregarded the United States District Court's order of August 6, 1975.

The remaining question is whether the trial court correctly held that order No. 1244 was beyond the power of the State of Washington Department of Fisheries and its director.

RCW 75.40.060[4] is a grant of power to the director independent of and in addition to the power conferred by RCW 75.08.012.[5] The last mentioned statute *inter alia* authorizes

---

[4]RCW 75.04.060 reads:

"The director and his duly authorized agents are hereby authorized to adopt and to enforce the provisions of the convention between the United States and the Dominion of Canada for the protection, preservation and extension of the sockeye salmon fishery of the Fraser River system, signed at Washington, District of Columbia, on the twenty-sixth day of May, 1930, and the regulations of the commission promulgated under authority of said convention." *See also* RCW 75.08.030.

[5]RCW 75.08.012 states:

"It shall be the duty and purpose of the department of fisheries to preserve, protect, perpetuate and manage the food fish and shellfish in the waters of the state and the offshore waters thereof to the end that such food fish and shellfish shall not be taken, possessed, sold or disposed of at such times and in such manner as will impair the supply thereof. For the purpose of conservation, and in a manner consistent therewith, the department shall seek to maintain the economic well-being and stability of the commercial fishing industry in the state of Washington."

the director to manage the food fisheries resources of the state for purposes of conservation. RCW 75.40.060 as permitted by a federal statute (16 U.S.C. § 776–776f (1974)), authorizes the director "to adopt" the regulations promulgated by the International Pacific Salmon Fisheries Commission, as approved by the United States and the Dominion of Canada.

The IPSFC regulations have a twofold purpose (1) to insure a proper escapement of sockeye and pink salmon and (2) in the language of the convention as amended by the pink salmon protocol to "regulate the fish that may be caught each year to be taken by the fishermen" of each country. As appellants' brief points out at page 28:

> Since much of the Canadian harvest and, of course, all of the spawning escapement will occur after the fish have left United States waters, no regulation is intended to accomplish purely conservation goals.

The regulations referred to in RCW 75.40.060 mean valid regulations. If the United States withdraws its consent previously given to an IPSFC regulation or portion thereof, the position of the United States in the instant case is that the portion of the regulations to which consent is withdrawn is no longer valid. The correctness of the United States' position is a political question to be decided by the parties to the convention, namely, the United States and the Dominion of Canada—not by the court nor by the International Pacific Salmon Fisheries Commission. *Baker v. Carr, supra; Ex parte Peru, supra; Holmes v. Laird, supra,* and *Chae Chan Ping v. United States, supra.* Accordingly, the issue was not justiciable but rather political. The trial court lacked power to adjudicate the question of the validity of that portion of the regulation as above described, consent to which had been withdrawn by the United States.

For that reason the trial court's conclusion the United States could not unilaterally withdraw its consent to a portion of the IPSFC regulations, was beyond its power.

Order No. 1244, as already pointed out, adopts IPSFC regulations which were in effect at the time. That order in effect, left to the United States and the Dominion of Canada the matter of settling the political controversy as to the effect of the withdrawal of consent to that portion of the IPSFC regulations "which allocate open fishing times among the various types of gear within the United States Convention waters." Joint exhibit 37. As already pointed out, the controversy was in fact settled by the adoption of an additional regulation for the year 1976.

It follows the appealed judgment dealing with the 1975 IPSFC regulations must be reversed whether or not the trial court's jurisdiction to proceed to judgment survived the entry of the August 6, 1975, stay, and injunction order.

STAFFORD and UTTER, JJ., concur with HOROWITZ, J.